# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 3:09-00158-06

LEODITUS ARAMUS SMITH,

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Leoditus Aramus Smith's Motion for Reduction of Sentence under the First Step Act of 2018. *Mot. for Reduction of Sentence,* ECF No. 563. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** his motion.

## I. BACKGROUND

On September 14, 2009, Defendant pleaded guilty to an indictment charging him with conspiracy to possess with the intent to distribute fifty grams or more of cocaine base, or "crack," in violation of 21 U.S.C. § 846. *Eligibility Mem.*, ECF No. 573, at 1. At the time, this quantity of crack subjected Defendant to a mandatory minimum sentence of ten years imprisonment. *Resp.*, ECF No. 577, at 2. His relatively extensive criminal history, including prior drug felonies, earned Defendant a criminal history score of fifteen and placed him in criminal history category VI. *Id.* This history also rendered Defendant a career offender under the Sentencing Guidelines, resulting in a total offense level of thirty-four and a guideline range of 262 to 327 months imprisonment. *Probation Mem.*, at 3. On December 15, 2009, the Court determined that a sentence at the bottom end of the guideline range was appropriate and imposed a term of imprisonment of 262 months and a five-year term of supervised release. *Resp.*, at 2.

To date, Defendant has served approximately 118 months of his sentence. *Probation Mem.*,

at 4. He has accumulated a series of scattered sanctions while incarcerated, but has also completed the drug education program, the non-residential drug treatment program, and "numerous" other educational courses.[1] *Id.* At present, Defendant's projected release date is November 18, 2028. *Id.*

## II. LEGAL STANDARD

When a court imposes a sentence of imprisonment, it is considered the final judgment on the matter and the court, as a general prohibition, "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §§ 3582(b) & 3582(c)(1)(B). However, a court can modify a sentence where it is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

The First Step Act of 2018 states, in relevant part, that a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115–391, 132 Stat. 5194, § 404(b) (2018) (hereinafter "*The First Step Act*"). Section Two of the Fair Sentencing Act increased the quantity of cocaine base, or "crack," which triggers a mandatory minimum penalty. Pub. L. No. 111-220, §2, 124 Stat. 2372 (2010). Section Three eliminated the statutory minimum sentence for simple possession of crack. *Id.* at § 3.

To be eligible for a reduction in sentence, a defendant's sentence must not have been imposed or previously reduced under sections two or three of the Fair Sentencing Act of 2010.[2] *Id.* at § 404(c). Nor can a defendant have been previously denied a reduction under § 404 of the First Step Act. *Id.* While a defendant, the Government, or the Court can move for a reduced sentence, individuals are not entitled to a reduction as courts are not required to grant relief under

---

[1] Information related to Defendant's institutional adjustment—including his progress in educational courses and any sanctions—are drawn from the Bureau of Prison's SENTRY inmate management system.

[2] The Fair Sentencing Act was enacted on August 3, 2010. Thus, the offending act must have been committed before this date.

§ 404. *Id.* The First Step Act therefore represents a broad grant of authority to the federal courts.

Courts in this district and throughout the Fourth Circuit agree that the proper mechanism to seek relief under the First Step Act is 18 U.S.C. § 3582(c)(1)(b).[3] *United States v. Banks*, No. 1:07-00157, 2019 WL 2221620, at *4 (S.D. W. Va. May 22, 2019) (Faber, J.) (citing *United States v. Shelton*, No. 3:07-329, 2019 WL 1598921, at *3 (D.S.C. April 15, 2019) (listing cases)). As such, the language of First Step Act controls the Court's ability to grant relief. *See Wright v. United States*, 393 F. Supp. 3d 432, 441 (E.D. Va. 2019). Under § 3582(c)(1)(B), a court can choose to conduct a simple mechanical reduction of a sentence based on a decreased exposure to statutory minimums and the correlating lower guideline range.

However, courts are not limited by § 3582(c)(1)(B). The First Step Act allows a court to "impose a reduced sentence" if an individual is eligible. *The First Step Act,* § 404(b). Reading the word "impose" consistently within the United States Code reveals that this equates to the announcement of a convicted person's sentence. *See* 18 U.S.C. §§ 3553(a) and 3582(a). Therefore, the First Step Act grants courts statutory authority to conduct a full resentencing, in addition to the discretion to decide when doing so is appropriate. *See Wright*, 393 F. Supp. 3d at 441. Whether or not a court decides to resentence a defendant, the language of the First Step Act does not require a hearing. *See id.* at 441. It is within the sound judgment of the Court to determine if an evidentiary or sentencing hearing is necessary to address the issues of a particular case.

When considering the statutory authority under the First Step Act, federal courts presume

---

[3] The U.S. Attorney's Office for the Southern District of West Virginia contends that the appropriate mechanism is 18 U.S.C. §3582(c)(2). This cannot be the case, as § 3582(c)(2) permits reductions when the Sentencing Commission has reduced the sentencing range subsequent to a defendant's sentencing. Here, the sentencing changes are not the result of the Commission's revisions, but Congress's enactment of a new statute. *See United States v. Shelton*, No. 3:07-329, 2019 WL 1598921, at *2 (D.S.C. April 15, 2019).

Congress acts in the context of relevant case law. *Abuelhawa v. United States*, 556 U.S. 816, 821 (2009) (citing *Williams v. Taylor*, 529 U.S. 362, 380–81, n.12 (2000). The Fair Sentencing Act, and its application through the First Step Act, is administered in light of the Supreme Court's decision in *United States v. Booker*, which held that mandatory guideline ranges are unconstitutional. 543 U.S. 220, 244–45 (2005). While *Booker* is not retroactively applied on a collateral attack, a court may now vary outside of the guideline range if it chooses to conduct a full resentencing. *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005). This includes variances based on policy disagreements with the Sentencing Guidelines. *See Kimbrough v. U.S.*, 552 U.S. 85 (2007).

Once a defendant is determined to be eligible, the Court must examine the statutory threshold to which that defendant pleaded and compare it to the alteration of the applicable law. The Court recognizes that the drug quantity listed in an indictment traditionally tracks the statutory minimums to ensure a defendant's plea or conviction complies with the Sixth Amendment. It is not illogical to speculate that had the Fair Sentencing Act been enacted at the time of a defendant's plea, the elevated statutory amounts would be listed in the indictment and may have had little to no impact on the defendant's decision to plea. *See United States v. Blocker*, No. 4:07-36-RH, 2019 WL 2051957, at *4 (N.D. Fla. Apr. 25, 2019) (explaining "indictment-controls" versus "offense-controls" theories, and adopting the latter.). Yet to assume such a fact impermissibly alters the indictment and unconstitutionally abridges a defendant's Sixth Amendment rights. *See Alleyne v. United States*, 570 U.S. 99 (2013). In the context of First Step Act cases, this is true whether a court is conducting a full resentencing or not. *See*, *e.g.*, *United States v. Smith*, 379 F. Supp. 3d 543, 546–47 (W.D. Va. May 13, 2019). Due to the constitutional considerations, this Court—along with a number of others— adopts an "indictment-controls" interpretation of the First Step Act's

impact on a defendant's plea. *United States v. Springs*, No. 3:05-CR-00042-FDW-1, 2019 WL 3310092 (W.D.N.C. July 23, 2019) (applying *Alleyne* to First Step Act cases) (listing cases).

### III. DISCUSSION

In reviewing the instant case, the Court considered the pleadings, the original presentence report, the judgment order and statement of reasons, any supplemental material from the defendant, and the memorandum submitted by the Probation Office, which includes a summary of the defendant's institutional adjustments while in the custody of the Bureau of Prisons.

Before proceeding further, the Court notes that the United States, the defendant, and the Probation Office all agree that the forty-year statutory maximum penalty provided for by 21 U.S.C. § 841(b)(1)(B) adjusts Defendant's base offense level under the career offender guideline to thirty-four.[4] After acceptance, Defendant's total offense level falls to thirty-one. With a criminal history category of VI, Defendant's guideline sentencing range decreases to 188 to 235 months—a meaningful reduction in its own right. Nevertheless, the First Step Act authorizes the Court to sentence Defendant anew and enter a variance in appropriate cases. Defendant argues that this is such a case, and that this "Court should schedule a full resentencing in order to determine the extent of any reduction." *Eligibility Mem.*, at 4. The Court disagrees.

To begin, Defendant's argument for a full resentencing appears to rest upon the notion that his offense conduct would expose him to a lower guideline range than would his status as a career offender. The Court takes such arguments seriously, and has historically determined that downward variances are appropriate where the career offender guideline disproportionately affects a defendant's sentencing range. Here, however, Defendant is simply incorrect that his offense-

---

[4] The same provision also decreases Defendant's minimum term of supervised release to four years. *See* 21 U.S.C. § 841(b)(1)(B).

based guideline range is lower than that based on his career offender status.

A brief review of the Guidelines' application to Defendant's case makes this point clearly. Under the November 1, 2009 version of the Guidelines, Defendant's status as a career offender did not affect his sentencing exposure. Under either a conduct-based or career offender-based calculation, Defendant's total offense level was thirty-four. Today, however, even a generous interpretation of Defendant's offense conduct actually leads to a *higher* offense level than under the career offender guideline.

To determine this conduct-based offense level, the Court begins by undertaking a revised calculation of the amount of crack attributed to Defendant for sentencing purposes. At his original sentencing, the "total amount of drugs attributed to the defendant . . . included 196 grams of cocaine base, 2.398 kilograms of cocaine powder, and 280 grams of heroin for a total drug weight of 4,679.6 kilograms of" converted drug weight. *Probation Mem.*, at 2. This calculation is heavily influenced by the Guidelines' 18:1 crack-to-powder cocaine ratio, however. This Court historically addresses that disparity by varying downward and employing a ratio of 10:1. While there is no meaningful difference in the chemical composition of the two, the Court recognizes the particular impact crack has had on this community. The blight of this epidemic, together with the particularly predatory manner in which it is marketed, justifies this increase compared to powder cocaine.

Employing this 10:1 ratio under the current Guidelines results in a total converted drug weight of 1,151.6 kilograms—far less than the original 4,679.6 kilograms of converted drug weight, but still a substantial quantity of illegal drugs. This amount, in turn, exposes Defendant to a base offense level of thirty. After applying the same enhancements and reductions the Court adopted at Defendant's original sentencing, Defendant's total offense level actually *rises* to thirty-

two—one level higher than the applicable career offender offense level.[5] Under § 4B1.1(b) of the Guidelines, this higher calculation would typically apply. Nevertheless, given the parties' agreement that a total offense level of thirty-one is appropriate here, the Court will not apply the higher conduct-based offense level.[6]

Based on the issues present in the case and the authority under § 404 of the First Step Act, the Court determines that a hearing is not necessary to effectuate justice. After considering the revised guideline range, the nature and circumstances of the offense, the history and characteristics of the defendant, the needs for deterrence, and the other relevant factors under 18 U.S.C. § 3553, the Court imposes a reduced sentence of 188 months of imprisonment, to be followed by four years of supervised release. This Order in no way alters any other aspect of the Court's previous judgment in this case.

### IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART** Defendant's motion to reduce sentence under the First Step Act, ECF No. 563, and **ORDERS** the defendant's sentence be **REDUCED** to 188 months imprisonment and four years of supervised release. To the extent that Defendant requests a full resentencing, the Court **DENIES IN PART** his motion. The Court further **ORDERS** any good time credit and the revised release date be calculated within **fourteen days** of the entry of this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant,

---

[5] The Court remains confused by Defendant's unexplained argument that his conduct-based offense level is twenty-five. *See Eligibility Mem.*, at 3. Beyond failing to provide any information about how this incorrect offense level was calculated, Defendant goes on to argue that he is exposed to "168 to 210 months [imprisonment] based on the offense conduct." *Id.* at 4. While still wrong, this range corresponds with a total offense level of thirty, not twenty-five.

[6] As the Court is not conducting a full resentencing in this case, it is also disinclined to revisit every aspect of Defendant's original sentencing—including his status as a career offender.

the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: November 6, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE